UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:16-cv-00078-JHM

JODY HUME                                                                               PLAINTIFF

V.

QUICKWAY TRANSPORTATION, INC.                                          DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand [DN 6] and Defendant's

Motion to Dismiss [DN 10]. Plaintiff's Motion to Remand has been fully briefed; however,

Plaintiff has failed to respond to Defendant's Motion to Dismiss. These matters are now ripe for

decision.

I. BACKGROUND

Plaintiff, Jody Hume, began working for Defendant, Quickway Transportation, Inc., on

or about April 3, 2013 as a "commercial truck driver." (Am. Compl. [DN 6-1] ¶ 8). Plaintiff

received $19.85 per hour or $793.88 per week (meaning he worked approximately 40 hours per

week). (Id. ¶ 9.) On March 6, 2014, Plaintiff sustained work-related injuries to "his left arm,

neck, shoulder and chest." (Id. ¶ 10.) He "notified his supervisor immediately of his injuries and

filed a workers' compensation claim of which his supervisors and [Defendant] were aware." (Id.

¶ 11.) These injuries left Plaintiff unable to continue to work as a commercial truck driver, and,

as a result he was medically ordered not to lift over 10 pounds, push or pull greater than 20

pounds, and perform overhead work with his left arm. (Id. ¶ 13.)

Plaintiff alleges that Defendant informed him that Defendant did not have light duty

assignments available for drivers at their facilities but that he must "accept an offer of a light

duty assignment through a separate employer at a non-profit company through [Defendant's]

Worker[s'] Compensation Carrier and Transition2Work" program.  (Id.  ¶¶ 14–15.)  Initially, Plaintiff worked in a light duty capacity with Habitat for Humanity for over a year, between April 19, 2014 and August 1, 2015, in which he was paid $9.00 per hour and worked 24 hours per week.  (Id. 17–18.)  During his time at Habitat for Humanity, Plaintiff received treatment for his injuries.  (Id. ¶ 19.)  Plaintiff then scheduled major back surgery on September 16, 2015 and notified Defendant of his upcoming FMLA leave for the surgery.  (Id. ¶¶ 19–20.)  Subsequently, Plaintiff alleges that he saw individuals surveilling him in two vehicles parked outside of his residence between August and September 2015.  (Id. ¶ 21.)

On August 1, 2015, Plaintiff claims that he received notice that his temporary light duty assignment was changing and that he would soon begin work with another non-profit company, Volunteers of America.  (Id. ¶ 22.)  The notice stated that if Plaintiff did not comply with this change, he would be terminated and his workers' compensation benefits would cease.  (Id.)  Thereafter, Plaintiff filled out the employment application and documentation necessary for his new job at Volunteers of America.  (Id. ¶ 27.)

Plaintiff was scheduled for an interview and walkthrough with Volunteers of America on August 3, 2015, but Plaintiff rescheduled for August 4, 2015.  (Id.)  Plaintiff completed the interview and walkthrough on August 4, 2015 and was given a start date of August 5, 2015 at 4:00 P.M.  (Id.)  Plaintiff alleges that this position with Volunteers of America diminished his responsibilities from those he had at Habitat for Humanity, as he was reduced to performing "menial functions" like "answering the phones, greeting customers, answering the door by pressing a buzzer, [] monitoring cameras, and wiping down the table from a seated positon," for which he was paid $9.00 an hour.  (Id. ¶ 28.)

2

Plaintiff alleges he received a telephone call from an employee of Defendant's workers' compensation insurance carrier, Gary Zukin, asking why Plaintiff had not attended the August 3, 2015 interview and walkthrough at Volunteers of America, and Plaintiff responded that he had rescheduled it.  (Id. ¶ 29.)  Plaintiff and his attorney then called Zukin to again confirm that Plaintiff had completed his scheduled duties on August 4, 2015.  (Id.)  Following those phone calls, Plaintiff's attorney left him a voicemail indicating that Zukin had advised that, as a result of the "numerous phone calls" from Plaintiff and his attorney, Volunteers of America "would rather not have [Plaintiff] work there," that Volunteers of America does "not want [Plaintiff] to report to [its] site," and that Zukin was "not inclined to continue paying [Plaintiff] benefits." (Id. ¶ 30).  Plaintiff was paid for his last day of light duty with Habitat for Humanity on August 1, 2015 and for three days of vacation pay.  (Id. ¶ 31.)  His new light duty assignment with Volunteers of America was rescinded on August 5, 2015, and Plaintiff applied and was approved for unemployment on August 9, 2015.  (Id. ¶¶ 31–32.)

Plaintiff's unemployment benefits stopped for a period of time around September 2015, as Plaintiff was still considered to be employed by Defendant.  (Id. ¶ 40.)  Defendant restarted payment of Plaintiff's temporary total disability payments after his surgery on September 16, 2015.  (Id. 41–42.)  However, on October 12, 2015, Plaintiff received a voicemail "informing him that he had been 'termed.'"  (Id. ¶ 47.)  Later on October 12, 2015, Plaintiff received a letter dated October 8, 2015 stating that he had been terminated effective August 12, 2015, along with a packet of information about his benefits.  (Id. ¶ 48.)

Defendant removed this action from Jefferson County Circuit Court on February 10, 2016, and Plaintiff later filed a Motion to Remand.  Defendant then filed its Motion to Dismiss the action.  Both the requests for remand and dismissal are now before the Court.

## II. DISCUSSION

### A.  Motion to Remand

#### 1. Standard of Review

Removal from state to federal court is proper for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a). Defendant removed this action pursuant to 28 U.S.C. § 1441, claiming that this Court has diversity jurisdiction over the action under 28 U.S.C. § 1332.  Diversity jurisdiction gives "[t]he district courts . . . original jurisdiction [over] all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a)(1).

#### 2. Basis for Jurisdiction

Plaintiff argues that his Motion to Remand should be granted because he amended his original Complaint, and, by withdrawing his FMLA claim under 29 U.S.C. § 2615, he removed any basis for federal question jurisdiction.  (Pl.'s Mot. Remand [DN 6] at 1.)  Defendant counters by noting that its Notice of Removal cited two grounds for jurisdiction: federal question and diversity.  (Def.'s Resp. [DN 9] at 1.)  Plaintiff's Memorandum only addresses the federal question issue, as once more he states that because all federal claims have been removed from his Complaint, the Court should decline to exercise its discretion to hear his state law claims. (Pl.'s Mem. Supp. Mot. Remand [DN 12] at 3–4.)  Plaintiff does not challenge the existence of diversity jurisdiction.

Plaintiff is correct in that, generally, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to . . . remanding [the state law claims] to state court if the action was removed."  Davey v. St. John Health, 297 F. App'x 466, 473 (6th Cir.

4

2008) (citing <u>Musson Theatrical, Inc. v. Federal Exp. Corp.</u>, 89 F.3d 1244, 1254–55 (6th Cir.1996)); <u>see</u> <u>Novak v. MetroHealth Med. Ctr.</u>, 503 F.3d 572, 584 (6th Cir. 2007); <u>Thurman v. Daimler Chrysler, Inc.</u>, 397 F.3d 352, 359 (6th Cir. 2004).   However, here, an alternate basis for subject matter jurisdiction exists, and that is diversity of citizenship.

Diversity jurisdiction requires that all plaintiffs be of diverse citizenship from all defendants and the amount in controversy exceed $75,000.   In terms of citizenship, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).  Both Plaintiff and Defendant alike have conceded that Plaintiff is a resident of Kentucky, whereas Defendant is a "foreign corporation" with its "principal place of business located . . . [in] Tennessee."  (Am. Compl. [DN 6-1] ¶ 2; Def.'s Notice Removal [DN 1] at 1–2.). Plaintiff does not contest the citizenship of Defendant,[1] and Defendant has adequately stated the citizenship of the parties.

Defendant stated in its Notice of Removal that "Plaintiff's Complaint contemplates an amount of damages in excess of $75,000."  (Def.'s Notice of Removal [DN 1] ¶ 10.)  "A defendant wishing to remove a case bears the burden of satisfying the amount-in-controversy requirement." <u>Everett v. Verizon Wireless, Inc.</u>, 460 F.3d 818, 829 (6th Cir. 2006) (citing <u>Gafford v. Gen. Elec. Co.</u>, 997 F.2d 150, 155 (6th Cir. 1993) <u>abrogated on other grounds by</u> <u>Hertz Corp. v. Friend</u>, 559 U.S. 77 (2010)).  Generally, "the sum demanded in good faith in the

---

[1] Defendant mentions that Plaintiff's Motion to Remand makes an implied argument that Defendant's principal place of business is in Kentucky because Plaintiff states that Defendant is "registered to do business with Kentucky Secretary of State and conducts business out of its offices . . . [in] Louisville, KY."  (Pl.'s Mot. Remand [DN 6] at 1.)  Even if Plaintiff is asserting that Defendant's principal place of business is in Kentucky, this argument is of no moment.  Under <u>Hertz</u>, a corporation's principal place of business is it's "nerve center," or where "a corporation's officers direct, control, and coordinate the corporation's activities."  <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 92–93 (2010).  Here, Defendant has sufficiently shown that its "corporate officers are located in Nashville, and the company's headquarters in Nashville, Tennessee, is where the corporate officers work and where they direct, control and coordinate the company's business."  (Def.'s Resp. [DN 9] at 7.)  Plaintiff has neither argued nor produced any evidence to controvert this assertion.

initial pleading shall be deemed to be the amount in controversy."  28 U.S.C. § 1446(c)(2).

However, "when the plaintiff's complaint does not state the amount in controversy, the

defendant's notice of removal may do so."   Dart Cherokee Basin Operating Co., LLC v. Owens,

135 S. Ct. 547, 551 (2014) (citing 28 U.S.C. § 1446(c)(2)(A)).  In order to prove the requirement

is met, "a defendant's notice of removal need include only a plausible allegation that the amount

in controversy exceeds the jurisdictional threshold."  Id. at 551.  However, when a plaintiff

protests the removal, the removing defendant must prove the jurisdictional requirements are met

by a preponderance of the evidence.  Puri v. Baugh, No. 1:14-CV-137, 2015 WL 3796346, at *2

(W.D. Ky. June 18, 2015) (citing Everett, 460 F.3d at 829).  This "does not place upon the

defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not

less than the amount-in-controversy requirement."  Spence v. Centerplate, 931 F. Supp. 2d 779,

781 (W.D. Ky. 2013) (citing Gafford, 997 F.2d at 158; see also Dart Cherokee, 135 S. Ct. at 554

("[D]efendants do not need to prove to a legal certainty that the amount in controversy

requirement has been met.")).

Here, Plaintiff does not object to the removal based on diversity jurisdiction—neither in

his Motion to Remand nor in his Memorandum in Support of the Motion to Remand does he

object to or argue against removal based upon diversity.  Regardless, the Court finds that

Defendant has established that Plaintiff's claims could plausibly exceed the amount in

controversy.  Defendant notes that Plaintiff "earned an average weekly wage of $793.88[.]"

(Def.'s Notice of Removal [DN 1] ¶ 10.)  Plaintiff was terminated effective August 12, 2015,

"approximately five months before he filed his Complaint."  (Id.).  Defendant further argues that

"[t]he median time for a civil case to proceed to trial in a district court within the Sixth Circuit

following the filing of a Complaint is 26.8 months."  (Id.)  Therefore, "by the time of trial, the

6

amount in controversy with respect to Plaintiff's claim for alleged past lost wages alone would exceed $100,000—an amount well over the statutory threshold." (Id.)  In addition, Plaintiff is also seeking to recover for a loss of "health and retirement and stock benefits, and other economic losses, emotional pain and suffering, mental anguish . . . humiliation, embarrassment . . . personal indignity and other intangible injuries," and generally he seeks recovery for a "loss of benefits, compensatory damages, [and] punitive damages."[2]  (Id.)  Accordingly, the Court finds that Defendant has established that Plaintiff's claims could exceed the amount in controversy. See Spence, 931 F. Supp. 2d at 781 (finding that the amount in controversy exceeded the jurisdictional threshold, potentially over $200,000, as the "[p]laintiff could recover up to $17,540 in back pay and $35,100 in future wages," coupled with "humiliation, emotional distress, and potential punitive damages of four times a compensatory damages award").

Accordingly, because the parties are citizens of different states and the amount in controversy requirement is met, the Court will not remand this matter back to Jefferson County Circuit Court.

**B.  Motion to Dismiss**

The Sixth Circuit has held that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."  Scott v. Tenn., 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir.1989) (table decision).  "In Humphrey v. U.S. Attorney General's Office, the Sixth Circuit cited Scott with

---

[2] Defendant also argues that the punitive damages alone could easily push Plaintiff over the jurisdictional threshold. This district has held that "[t]he Supreme Court has embraced a punitive-to-compensatory damages ratio near 4:1." Carneal v. Travelers Casualty Ins. Of America, No. 5:12–CV–00174, 2013 WL 85148 (W.D. Ky. Jan. 7, 2013) (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 424–26 (2003)).  So, even if the Court reduced "that amount to a 1:1 ratio," it "would result in Plaintiffs being awarded . . . well above the statutory requirement." Id.  Here, utilizing only Plaintiff's claim for past lost wages (not including his claim for benefits, emotional distress, mental anguish, embarrassment and humiliation), which, as seen, could total over $100,000, and, even reducing the ratio to 1:1, Plaintiff could be awarded another $100,000 in punitive damages.  Plaintiff's damages would then total over $200,000—well above the statutory threshold.

approval in discussing the waiver principle, and affirmed the district court's dismissal of the plaintiff's complaint where the plaintiff failed to oppose the defendant's motion to dismiss." Zimmerman v. CitiMortgage, Inc., No. 3:11-CV-00164-JHM, 2012 WL 1067912, at *8 (W.D. Ky. Mar. 29, 2012) (citing Humphrey v. U.S. Attorney General's Office, 279 F. App'x 328, 331 (6th Cir. 2008)).

In the instant case, Plaintiff filed a "Response to Motion to Dismiss and Memorandum in Support of Plaintiff's Motion to Remand," representing that he was filing a Response to Defendant's Motion to Dismiss.  (Pl.'s Resp. [DN 12].)  Ultimately, Plaintiff only addressed his own Motion to Remand within this filing and failed to address Defendant's Motion to Dismiss. Though the Court could find that Defendant's arguments are not controverted, and that, under the unpublished Humphrey and Scott decisions, dismissal of the Plaintiff's claims is appropriate, the Court will address the Motion on the merits.  Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1991) (finding the court is required at minimum to find that the moving party has discharged its burden in the context of a motion to dismiss even when the adverse party has not responded to the motion).

### 1. Standard of Review

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," id., and determine whether the "complaint . . . states a plausible claim for relief," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct."  Id. at 679.  Instead, "a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Id. at 663 (quoting Fed. R. Civ. P. 8(a)(2)).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## 2. Worker's Compensation Retaliation

Plaintiff alleges that Defendant violated KRS § 342.197(1), which states: "No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter."  (Am. Compl. [DN 6-1] ¶ 60.)  "To establish a claim under this provision, an employee must show that (1) [he] participated in 'a protected activity,' (2) the employer 'knew' that the employee had done so, (3) the employer took an 'adverse employment action' against the employee, and (4) 'a causal connection' existed between the two."  Witham v. Intown Suites Louisville Ne., LLC, 815 F.3d 260, 263 (6th Cir. 2016) (quoting Dollar Gen. Partners v. Upchurch, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006).  Defendant argues that Plaintiff has not adequately and plausibly pled a claim for retaliation under KRS § 342.197(1); however, despite Plaintiff's lack of response, the Court disagrees.

First, "a workers' compensation claim [is] an activity expressly protected under KRS [§] 342.197."  Upchurch, 214 S.W.3d at 915.  Plaintiff did precisely this: he filed for workers'

compensation benefits, meaning he engaged in a protected activity. (Am. Compl. [DN 6-1] ¶ 63.) Second, Plaintiff immediately notified his supervisors of his injuries and filed a workers' compensation claim, of which he claims his supervisors and Defendant were aware. (Id. ¶¶ 11, 62.) Defendant also offered Plaintiff employment through its Workers Compensation Carrier and Transition2Work, and directed Plaintiff to accept this employment or "he would be terminated and his workers' compensation benefits would stop." (Id. ¶ 15.) Needless to say, Defendant was aware that Plaintiff had filed for workers' compensation benefits. Third, "a plaintiff must point to a materially adverse change in the terms or conditions of her employment." Crane v. Mary Free Bed Rehab. Hosp., 634 F. App'x 518 (6th Cir. 2015) (citing Kocsis v. Multi–Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996)). For example, "a materially adverse change include[s] 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or other indices that might be unique to a particular situation.'" Id. (citing Kocsis, 97 F.3d at 886). "At a minimum, the change in employment conditions must be more than an inconvenience or an alteration of job responsibilities." Id. Plaintiff alleges that Defendant "forced [Plaintiff] to take a demotion and a position with another company," which resulted in "a loss in pay, a loss in title, a loss in benefits, a loss in responsibilities, a loss in hours, and significantly diminished material responsibilities." (Id. ¶ 65.) Plaintiff also claims that Defendant "materially and adversely change[d] the terms and conditions of his employment, significantly diminish[ed] his material responsibilities, and terminate[d] his employment." (Id. ¶ 71.) Based on these facts, Plaintiff has satisfied this prong. Lastly, Plaintiff has adequately pled that a causal connected existed between his request for workers' compensation and his adverse employment action. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal

proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." Crane v. Mary Free Bed Rehab. Hosp., 634 F. App'x 518, 527 (6th Cir. 2015), cert. denied, No. 15-1206, 2016 WL 1182442 (May 31, 2016) (citing Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008)); see Futrell v. Douglas Autotech Corp., No. 5:09-CV-21, 2010 WL 1417779, at *3 (W.D. Ky. Apr. 2, 2010) (finding close temporal proximity in the month between the time the plaintiff began working with restrictions and the date on which she was terminated).  Plaintiff was injured on March 6, 2014 and "immediately" requested workers' compensation benefits.  (Id. ¶¶ 10–11.) He was then "forced" to take a job with Habitat for Humanity beginning only one month and thirteen days later on April 19, 2014, in which he suffered adverse employment action as shown under the third prong.  (Id. ¶¶ 18–19.)   Plaintiff has adequately shown that there was close temporal proximity between events, thus evidencing enough of a causal connection in order to survive this Motion to Dismiss.

Despite Defendant's arguments that Plaintiff failed to sufficiently plead a claim for retaliation, the Court finds that Plaintiff has satisfied the requirements set forth in Fed. R. Civ. P. 8(a)(2).  Plaintiff has "state[d] a plausible claim for relief," Iqbal, 556 U.S. at 679; and, therefore, the Court will not dismiss Plaintiff's retaliation claim at this juncture.

### 3. Wrongful Termination/Discharge

Plaintiff asserts a claim for wrongful termination/discharge against Defendant "under the common law of the Commonwealth of Kentucky and public policy."  (Am. Compl. [DN6-1] ¶ 78.)  Plaintiff states that after being transferred from Habitat for Humanity, he was reassigned to work with Volunteers of America.  (Id. ¶ 74.)  Further, he recounts that Defendant "rescinded the offer of light duty [work] with Volunteers of America on August 5, 2015 and instructed

[Plaintiff] not to report to work at Volunteers of America."  (Id. ¶ 75.)  Defendant then stopped workers' compensation benefits on August 5, 2015.  (Id. ¶ 76.)  Finally, Plaintiff claims he was terminated "on September 17, 2015 retroactively to the date he sought FMLA benefits on August 12, 2015."  (Id. ¶ 77.)  Though it is deeply unclear under what unspecified theory of common law Plaintiff is bringing this wrongful termination claim based on these facts, the Court notes that Plaintiff mentions the Kentucky workers' compensation statute (KRS § 342.197), the Family Medical Leave Act (hereinafter "FMLA") (29 U.S.C. § 2601), and the Kentucky Civil Rights Act (hereinafter "KCRA") (KRS §§ 344.020 and 344.040).  (Am. Compl. [DN 6-1] ¶¶ 60, 77 81–83.)  Other than referring to these citations, and claiming that his wrongful discharge claim is supported by Kentucky common law, he fails to specifically state the basis for his common law and public policy claims.  Regardless, all three of Plaintiff's theories of recovery are foreclosed, as each statute mentioned by Plaintiff provides a structure for a remedy.

"Ordinarily, Kentucky allows 'an employer [to] discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible.'" Charles Print Fulfillment Servs., LLC, No. 3:11-CV-00553-TBR, 2015 WL 5786817, at *6 (W.D. Ky. Sept. 30, 2015) (citing Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows, 666 S.W.2d 730, 731 (Ky. 1983)).  However, "to that general rule, Kentucky recognizes a limited exception for terminations against public policy."  Id. (citing Grzyb v. Evans, 700 S.W.2d 399, 401 (Ky. 1985); see Hall v. Consol of Ky. Inc., 162 Fed.Appx. 587, 589–90 (6th Cir. 2006)). The Kentucky Supreme Court has ruled that only two situations exist in which grounds for discharging an employee are so contrary to public policy as to be actionable absent explicit legislative statements prohibiting the discharge: "First, where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of

12

employment.  Second, when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment."  Grzyb, 700 S.W.2d at 402; see Hall, 162 F. App'x at 589.  However, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute."  Grzyb, 700 S.W.2d at 401.

Each statute Plaintiff referenced provides a structure for pursuing a remedy; therefore, Plaintiff is limited to the remedy provided by those statutes.  Under KRS § 342.197, "Kentucky courts have emphasized that the scope of the right is now strictly a matter of statutory construction, not suitable for judicial expansion or reinterpretation."  Sheckles v. Ralcorp Frozen Bakery Products, Inc., No. CIV.A. 10-665-C, 2011 WL 873507, at *1 (W.D. Ky. Mar. 11, 2011) (quoting McCormack v.. RR Donnelley & Sons Co., 436 F. Supp. 2d 857, 859 (E.D. Ky. 2006)).  Similarly, "[t]he Family Medical Leave Act does provide a structure for pursuing a remedy; therefore, the FMLA cannot provide the basis for [a plaintiff's] wrongful discharge claim."  Patton v. Tru-Check Meter Serv., Inc., No. 1:10-CV-00166-JHM, 2011 WL 134922, at *2 (W.D. Ky. Jan. 17, 2011).  This Court has found that the law of Kentucky "will not allow [a plaintiff] to rely upon the FMLA in support of a common law wrongful discharge claim."  Id.; see also Parks v. UPS Supply Chain Sols., Inc., No. CIV.A. 11-404-DLB, 2014 WL 414230, at *14 (E.D. Ky. Feb. 4, 2014), aff'd, 607 F. App'x 508 (6th Cir. 2015) (collecting cases) ("[S]everal courts have held that wrongful discharge claims based on the Family Medical Leave Act . . . were [preempted].").  And, lastly, the Kentucky Supreme Court has held that the KCRA was enacted specifically "to adjudicate complaints of discrimination."  Grzyb, 700 S.W.2d at 401.   "Thus, the same statute which would provide the necessary underpinning for a wrongful discharge suit where there is sufficient evidence to prove . . . discrimination in employment practices also

13

structures the remedy.  The statute not only creates the public policy but preempts the field of its application."  Id.; see Broadway v. Sypris Techs., Inc., No. 3:09-CV-976, 2011 WL 847064, at *4 (W.D. Ky. Mar. 9, 2011) (deciding that wrongful discharge claim should not go forward because the Kentucky Civil Rights Act provides its own causes of action and remedies); Barber v. Humana, Civ. A. 3:10-CV25-H, 2010 WL 2106659 at *3 (W.D. K.Y. May 24, 2010) (holding that Plaintiff's cause of action for wrongful discharge in violation of public policy was preempted and subsumed by the KCRA claims); Shajee v. FedEx Express, No. 3:05-cv-211-H, 2007 WL 61850 at *4 (W.D. Ky. Jan. 3, 2007) (dismissing the plaintiff's claim for wrongful termination based on discrimination because the court found that the KCRA preempted this claim).  Accordingly, Plaintiff's common law claims for wrongful discharge based on public policy are foreclosed as to any claims arising from Plaintiff's request for workers' compensation benefits, Defendant's denial of FMLA benefits, or discrimination under the KCRA.

### 4. Discrimination

Plaintiff's Amended Complaint alleges age and disability discrimination under the KCRA.  (Am. Compl. [DN 6-1] ¶¶ 85–86.)  The KCRA makes it unlawful for an employer to "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . age forty (40) and over . . . [or] because the person is a qualified individual with a disability . . . ."  KRS § 344.040(1)(a).

#### a.  Age Discrimination

Defendant argues that "Plaintiff's Amended Complaint contains insufficient facts to show that he is entitled to relief for his claim of age discrimination under the KCRA."  (Def.'s Mem. Supp. Mot. Dismiss [DN 10-1] at 8.)  In Swierkiewicz, the Supreme Court considered and

14

rejected the argument that "a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework . . . in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Swierkiewicz v. Sorema, 534 U.S. 506, 508 (2002).  Rather, the Court held that the ordinary rules for assessing a complaint, found in Federal Rules of Civil Procedure 8(a)(2), must apply in employment discrimination cases.  Id. "The Sixth Circuit has recognized that Swierkiewicz was unaltered by the Supreme Court's decisions in Twombly and Iqbal." Bargo v. Goodwill Indus. of Kentucky, Inc., 969 F. Supp. 2d 819, 823 (E.D. Ky. 2013) (citing Keys v. Humana, Inc., 684 F.3d 605, 609 (6th Cir. 2012) (collecting cases)). With that, "the Sixth Circuit has continued to find that 'it [is] error for the district court to require [the plaintiff] to plead a prima facie case under McDonnell Douglas in order to survive a motion to dismiss.'" Id. (citing Keys, 684 F.3d at 609).  Therefore, the Court will review Plaintiff's age discrimination claim under Fed. R. Civ. P. 8(a).  Id.

Even under Rule 8(a), Plaintiff's Amended Complaint fails to contain a short and plain statement showing he is entitled to relief.  Plaintiff does allege that he "is over the age of forty years" and that he "is a member of a protected classification under KRS [§] 344." (Am. Compl. [DN 6-1] ¶ 85.)  Plaintiff also alleges that Defendant "discriminated against and treated [Plaintiff] differently with respect to terms, conditions, or privileges of employment." (Id. ¶ 91.) However, he offers no factual allegations to show that he was terminated based on age.  The only allegation that can be construed in Plaintiff's favor is that Defendant's "proffered legitimate nondiscriminatory reasons for such disparate treatment up to and including termination, if any, are mere pretext." (Id. ¶ 108.)  Plaintiff neither mentions his age nor provides any facts supporting discrimination based on age beyond paragraph 85 in the Amended Complaint (which only states that he is over the age of 40 and is in a protected class).  Without providing any facts

connecting his discharge with discrimination based on his age, the bare allegation of age discrimination is nothing but a legal conclusion that will not be accepted as true. See Iqbal, 556 U.S. at 679 ("While legal conclusions can provide a framework of a complaint, they must be supported by factual allegations."). As a result, Plaintiff has failed to plead a viable claim under the KCRA for age discrimination. See Bargo, 969 F. Supp. 2d at 823–24.

### b. Disability Discrimination

"To make out a disability discrimination claim, the plaintiff must plead and prove three elements: (1) that [he] had a disability within the KCRA's meaning; (2) that [he] was 'otherwise qualified' to perform the requirements of the job, with or without reasonable accommodation; and (3) that [he] suffered an adverse employment decision because of [his] disability." Moore v. Humana, Inc., No. 3:10-CV-26-S, 2010 WL 2961205, at *1 (W.D. Ky. July 26, 2010) (citing Hallahan v. Courier-Journal, 138 S.W.3d 699, 706–07 (Ky. Ct. App. 2004)).

Under the first element, Plaintiff must "allege facts from which an inference can be drawn that he was disabled." Thomas v. Dana Commercial Vehicle Products, LLC, No. 4:13CV-00041-JHM, 2014 WL 1329948, at *4 (W.D. Ky. Apr. 1, 2014).[3] In order to satisfy the definition of disability under the KCRA, Plaintiff "must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show how the impairment substantially limits one or more of those activities." Daryl L. Laferty v. United Parcel Serv., Inc., No. 3:14-CV-00853-TBR, 2016 WL 2587195, at *4 (W.D. Ky. May 4, 2016) (citing Azzam v. Baptist Healthcare Affiliates, Inc., 855 F. Supp. 2d 653, 658–59 (W.D. Ky. 2012); Howard Baer, Inc. v. Schave, 127 S.W.3d 589, 592 (Ky. 2003)).

---

[3] Though this case analyzes the plaintiff's motion to dismiss under the Americans with Disabilities Act (hereinafter "ADA"), the pleading requirements are the same under the KCRA, as "the language of the KCRA mirrors (for the most part) that of the" ADA, and "courts interpret the KCRA consistent with the ADA." Daryl L. Laferty v. United Parcel Serv., Inc., No. 3:14-CV-00853-TBR, 2016 WL 2587195, at *3 (W.D. Ky. May 4, 2016).

First, back injuries are typically considered recognized impairments.  See Mahon v. Crowell, 295 F.3d 585, 590 (6th Cir. 2002).  Here, Plaintiff has such impairment: he injured his back, "left arm, neck, shoulder, and chest."  (Am. Compl. [DN 6-1] ¶ 10.)  His injuries required "physical therapy, spinal steroid injections, and nerve blocks" to ease the pain, all of which were unsuccessful.  (Id. ¶ 19.)  Ultimately, he had to undergo "major [back] surgery for cervical discectomy and cervical vertebral fusion."  (Id.)

Second, typically, "major life activities" are those "that are of central importance to daily life," Levinson v. Mucker, 289 F. Supp. 2d 848, 853 (W.D. Ky. 2003), and examples under the KCRA "include, among other things, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working."  Brown v. Humana Ins. Co., 942 F. Supp. 2d 723, 731 (W.D. Ky. 2013) (citing Howard Baer, 127 S.W.3d at 592); see Laferty, 2016 WL 2587195, at *4 (recognizing driving as a major life activity under the KCRA.  Plaintiff has alleged that he could not do the following activities: "commercial driving, no lifting greater than 10 pounds, no pushing or pulling greater than 20 pounds, and no overhead work with left arm."  (Am. Compl. [DN 6-1] ¶ 19.)  Plaintiff has sufficiently identified working as a major life activity, as his job requires him to do and lift more than he is able to, evidencing why Defendant placed him on a light duty assignment rather than allowing him to continue in his normal line of work.

Third, because Plaintiff asserts that he was substantially limited in the major life activity of working, he "must 'show that his impairment significantly restricts his ability to perform either a class of jobs or a broad range of jobs, not just his current or a single job.'"  Laferty, 2016 WL 2587195, at *5 (quoting Hallahan, 138 S.W.3d at 709.)  The Sixth Circuit has recognized that an example of "an employee unable to work in a class of jobs" is when "he has a back

impairment that precludes him[] from heavy lifting and, therefore, from the class of heavy labor jobs." Spees v. James Marine, Inc., 617 F.3d 380, 398 (6th Cir. 2010) (citation omitted). "This dividing line between light-duty and medium- or heavy-duty work for purposes of determining what constitutes a class of jobs has also been previously recognized by" the Sixth Circuit. Id. (citing Henderson v. Ardco, Inc., 247 F.3d 645, 652 (6th Cir. 2001) (denying summary judgment on an ADA claim where the employer perceived an employee "as unable to perform anything but 'light duty' work, and . . . perceived that medium to heavy manual labor constituted a majority of the jobs available to her")). Plaintiff was restricted from working except on "light duty," and, because Defendant "do[es] not have light duty for drivers at their facilities," Plaintiff could no longer be employed as a commercial truck driver with Defendant, so he was required to take a light duty job through Defendant's "Worker's Compensation Carrier and Transition2Work" program. (Am. Compl. [DN 6-1] ¶¶ 14–15.) Therefore, Plaintiff has adequately pled that he was precluded from work in class of jobs (all jobs Defendant offers, as Defendant has no light duty jobs available), meaning Plaintiff satisfied all three prongs under the definition of "disability."

Under the second prong, Plaintiff must show "that he is otherwise qualified for the job, with or without reasonable accommodation." Jones v. Potter, 488 F.3d 397, 404 (6th Cir. 2007). Defendant argues that Plaintiff was not "otherwise qualified" because he was unable to perform his duties as a commercial driver due to his medical limitations. Though Plaintiff's injuries prevented him from performing his commercial driving job, he was able to perform in a light duty position, in which he had worked for over a year prior to being discharged. Reassignments based on injuries allow employees, like Plaintiff, to be considered "otherwise qualified" for their reassigned position rather than their original employment under the ADA and Kentucky's counterpart, the KCRA. See id. at 405 (finding that permanent positions are not the only

positions that matter at the time of firing—the plaintiff was reassigned from a "mail handler" to a "torn mail handler" and the jury could reasonably determine that he was "otherwise qualified" to perform his duties as a torn mail handler); Burns v. Coca-Cola Enterprises, Inc., 222 F.3d 247, 258 (6th Cir. 2000) (finding "otherwise qualified" can refer to a reassigned position); Cunningham v. Humana Ins. Co., No. 3:10-CV-56-H, 2011 WL 4054689, at *4 (W.D. Ky. Sept. 12, 2011) (finding that "otherwise qualified" can refer to the plaintiff's reassigned positon rather than original position).  Here, Plaintiff reassigned from his commercial driving position and to a light duty work, which he had performed for over a year.  Prior to being terminated, he was placed in another light duty assignment, in which he had proven he was qualified to work by his prior year's performance. Therefore, Plaintiff has met his initial burden of showing that he was "otherwise qualified" to perform light duty work.

Under the last prong, Plaintiff must show that he suffered an adverse employment decision because of his disability.  Plaintiff "must show a 'materially adverse change in the terms of her employment.'" Howard v. Magoffin Cty. Bd. of Educ., 830 F. Supp. 2d 308, 315 (E.D. Ky. 2011), aff'd, No. 12-5503, 2013 WL 362806 (6th Cir. Jan. 31, 2013) (quoting White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 791 (6th Cir.2004) (en banc); see Kocsis, 97 F.3d at 885).  Plaintiff claims that Defendant "limited, segregated, or classified [him] in a way that deprived him of light duty employment opportunities or otherwise adversely affected his employment status," "forced [him] to take a demotion and a menial position and employment with another company through [Defendant's] Worker['s] Compensation Carrier and Transition2Work," and "forced [him] to accept light duty employment" that resulted in "a loss in pay, a loss in title, a loss in benefits, a loss in responsibilities, a loss in hours, and significantly diminished material responsibilities."  (Am. Compl. [DN 6-1] ¶¶ 94, 97, 98.)  As Plaintiff

satisfied a similar prong in his retaliation claim, Plaintiff has successfully shown that he suffered adverse employment action here as well.

Accordingly, the Court finds that because Plaintiff has sufficiently pled that he met the definition for disabled under the KCRA and because the other two prongs for disability discrimination are undisputed, the Court cannot grant Defendant's request to dismiss this claim at this time.

### 5. Intentional Infliction of Emotional Distress

Defendant argues that Plaintiff's claim for intentional infliction of emotional distress must be dismissed because the allegations contained in Plaintiff's Amended Complaint fail to establish the elements for a successful claim under Kentucky's rigorous standard.[4]  Under Kentucky law, in order to establish a claim for intentional infliction of emotional distress: "1) the wrongdoer's conduct must be intentional or reckless; 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; 3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and 4) the emotional distress must be severe."  Stringer v. Wal-Mart Stores, Inc., 151 S.W.3d 781, 788 (Ky. 2004) overruled on other grounds by Toler v. Sud-Chemie, Inc., 458 S.W.3d 276 (Ky. 2014).  The second and fourth elements present problems for Plaintiff.

Under the second element, "[t]he Court must determine 'whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'"  Futrell, 2010

---

[4] Defendant also argues that the intentional infliction of emotional distress claim is preempted by the KCRA and the Kentucky workers' compensation statutes.  While Defendant is correct that the claim would likely be preempted by the KCRA for emotional distress relating to discrimination, it is unlikely that the emotional distress caused by retaliation under the Kentucky workers' compensation statutes would be preempted.  See Shajee, 2007 WL 61850 at *4 ("It is also well established that when a plaintiff prosecutes a statutory discrimination claim under the KCRA and a common law claim of intentional infliction of emotional distress, the former preempts the latter."); Haggard v. Martin, No. CIV.A.3:01CV614-H, 2002 WL 753230, at *3 (W.D. Ky. Apr. 25, 2002) ("The KWCA's exclusivity provisions do not apply here because [the plaintiff] has alleged *intentional* infliction of emotional distress . . . .").  Therefore, the Court will only address this claim based on Defendant's argument regarding the pleadings.

WL 1417779, at *4 (citing Stringer, 151 S.W.3d at 788–89); see Restatement (Second) of Torts § 46(1) cmt. h (1965). Kentucky courts have "set a high threshold for outrage claims," Stringer, 151 S.W.3d at 791, and, "in Kentucky, 'a claim for the tort of outrage requires the plaintiff to prove conduct which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Futtrell, 2010 WL 1417779, at *4 (quoting Humana of Ky., Inc. v. Seitz, 796 S.W.2d 1, 3 (Ky. 1990); see Restatement (Second) of Torts § 46(1) cmt. d (1965). The Kentucky Supreme Court reasoned that "citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." Kroger Co. v. Willgruber, 920 S.W.2d 61, 65 (Ky. 1996).

Here, Plaintiff's Complaint details no conduct that the Court can find to be "outrageous and intolerable." In fact, the Court is unsure of what conduct giving rise to an intentional infliction of emotional distress Plaintiff is referencing in his Amended Complaint, as he merely states that "by sanctioning or permitting [Plaintiff] to be discriminated against, harassed and retaliated against[,] [Defendant] engaged in extreme and outrageous conduct." (Am. Compl. [DN 6-1] ¶ 114.) Failure to make "payment[s] of benefits cannot be the basis for an action for outrageous conduct causing emotional distress," Zurich Ins. Co. v. Mitchell, 712 S.W.2d 340, 343 (Ky. 1986), and "[t]he mere termination of employment . . . do[es] not rise to the level of outrageous conduct . . . necessary to support a claim for [intentional infliction of emotional distress]," Miracle v. Bell County Emergency Med. Servs., 237 S.W.3d 555, 560 (Ky. App. 2007). Many employment-related actions such as "[b]eing demoted, criticized for work performance, passed over for promotion, and terminated pale[] in comparison to . . . instances

where Kentucky courts have found recovery appropriate." Bargo, 969 F. Supp. 2d at 828. Though being demoted to a position at Habitat for Humanity and later Volunteers of America, not receiving benefits, and eventually being terminated may have caused Plaintiff discomfort, the Court rejects the idea that these events can be reasonably regarded as rising to the level of extreme and outrageous under the standard set by Kentucky courts for a claim of intentional infliction of emotional distress.

### 6. Negligent Infliction of Emotional Distress

Defendant argues that Plaintiff's negligent infliction of emotional distress claim must be dismissed because it is preempted by both the Kentucky workers' compensation statute. Plaintiff claims that Defendant's negligent conduct that caused him emotional distress consisted of discrimination, harassment, and retaliation. (Am. Compl. [DN 6-1] ¶¶ 116–17.) Plaintiff has specifically included discrimination and harassment in Count III under the KCRA, and Plaintiff has included retaliation and harassment in Count I under the Kentucky workers' compensation statute. (Id. ¶¶ 63–65, 91, 94–105.) Bringing a common law tort claim for negligent infliction of emotional distress is preempted by the Kentucky workers' compensation statute; however, a claim under the KCRA relating to discrimination or harassment is not specifically preempted.

The general rule is that the "Kentucky Workers' Compensation Act [hereinafter KWCA] preempts common-law tort claims by an employee against his employer." Casey v. Vanderlande Indus., Inc., No. CIV.A. 3:01-CV-413-S, 2002 WL 1496815, at *2 (W.D. Ky. June 28, 2002) (citing Hardaway Mgmt. Co. v. Southerland, 977 S.W.2d 910, 917 (Ky.1998)); see Roof v. Bel Brands USA, Inc., No. 15-5105, 2016 WL 463461, at *6 (6th Cir. Feb. 8, 2016) (finding the KWCA provides the exclusive remedy for an employer's negligent actions, including negligent infliction of emotional distress). "Common law tort claim[s] [are] barred by the KWCA unless

[a plaintiff] can demonstrate that it satisfies the deliberate intention exception" under the Act, which requires that "the injury or death [was] proximately caused by the willful and unprovoked physical aggression of [an] employee, officer or director." Cox v. Koninklijke Philips, N.V., No. CIV. 13-406-GFVT, 2015 WL 1481471, at *9 (E.D. Ky. Mar. 31, 2015), opinion withdrawn in part on reconsideration of other claims sub nom. Cox v. Philips Elecs. N. Am. Corp., No. 13-406-GFVT, 2015 WL 5321634 (E.D. Ky. Sept. 11, 2015), aff'd sub nom. Cox v. Koninklijke Philips, N.V., No. 15-6048, 2016 WL 2641191 (6th Cir. May 9, 2016) (quoting KRS § 342.690(1)). And, as a matter of law, a claim for negligent infliction of emotional distress "cannot satisfy the deliberate intention test," as "[a] negligence claim, by definition, cannot demonstrate the requisite scienter of specific intent." Id. (citing Osborne, 399 S.W.3d at 17 (noting that negligent infliction of emotional distress cases are based on "general negligence principles")). Therefore, Plaintiff is foreclosed from bringing a negligent infliction of emotional distress claim based on any retaliation and harassment under the KWCA.

Regardless of this partial preemption, this claim also fails based on the pleadings. In Kentucky, negligent infliction of emotional distress is analyzed in accordance with common law negligence, requiring proof of duty, breach, causation, and damage. See Osborne v. Keeney, 399 S.W.3d 1, 17 (Ky. 2012). Further, a plaintiff's emotional distress "must be severe or serious," meaning that "a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case." Id. at 9. And, "the plaintiff must also show, by 'expert medical or scientific proof,' 'severe or serious emotional injury.'" Reed v. Gulf Coast Enterprises, No. 3:15-CV-00295-JHM, 2016 WL 79998, at *15 (W.D. Ky. Jan. 6, 2016) (quoting Osborne, 399 S.W.3d at 17–18). "A failure to establish any of these elements is

fatal to the claim." Id. (citing Blust v. Berea Coll., 431 F. Supp. 2d 703, 704 (E.D. Ky. 2006));
see M & T Chems. Inc. v. Westrick, 525 S.W.2d 740, 741 (Ky. 1974).

Here, Plaintiff's Amended Complaint lacks any factual allegations of mental distress.
Even if the Court reads the Amended Complaint generously in Plaintiff's favor, he has made
only bald, conclusory, and insufficient contentions, unsupported by facts, asserting only that
Defendant's "conduct directed against [Plaintiff] was negligent" and "[b]y sanctioning or
permitting [Plaintiff] to be discriminated against, harassed and retaliated against[,] [Defendant]
engaged in extreme and outrageous conduct." (Am. Compl. [DN 6-1] ¶¶ 116–17.) This
underdeveloped pleading neither properly states the elements of a negligence claim nor provides
facts giving rise to one. Further, Plaintiff's Amended Complaint fails to show any evidence of
any emotional injury, much less a severe or serious emotional injury. Such "naked assertion[s]
devoid of further factual enhancement" are insufficient to state a claim for negligent infliction of
emotional distress, see Iqbal, 556 U.S. at 678; thus, the Court will dismiss this claim.

### 7. Punitive Damages

Defendant argues that Plaintiff's Count VI for punitive damages should be dismissed as
well because "a claim for punitive damages is not a separate cause of action, but a remedy
potentially available for another cause of action." Dalton v. Animas Corp., 913 F.Supp.2d 370,
378 (W.D. Ky. 2012). The Court agrees. Punitive damages are appropriately requested as a
prayer of relief rather than a separate claim. Plaintiff has made such a request and whether
punitive damages are to be awarded in this case will be a matter left for future determination.

### III. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion to
Remand is **DENIED**. **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is

**DENIED** as to Count I for workers' compensation retaliation and Count III for disability

discrimination, and **GRANTED** as to Count II for wrongful discharge, Count III for age

discrimination, Count IV for intentional infliction of emotional distress, and Count V for

negligent infliction of emotion distress, and Count VI for punitive damages.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 15, 2016

cc: counsel of record

25